### HOWE v. CITY OF NEW YORK.

(District Court, S. D. New York. July 20, 1910.)

SALVAGE (§ 38*)—COMPENSATION—RELEASING GROUNDED VESSEL IN NEW YORK BAY.

    The ferryboat Bay Ridge went aground in New York Bay in a dense fog, and in response to her signals two tugs owned by libelant went to her assistance. One broke a hawser and suffered some other injuries, but after pulling for about 20 minutes the ferry boat floated. *Held*, that the service was one of salvage, although not of a high order, and that libelant was entitled to an allowance of $300 therefor, one-third to be divided among the officers and crews, and sufficient in addition to repair the injured boat.

    [Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 93–102; Dec. Dig. § 38.*

    Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage by Patrick Howe, master, in behalf of the owners and crews of two tugs, against the City of New York, as owner of the ferryboat Bay Ridge. Decree for libelant.

James J. Macklin, for libelant.
Archibald R. Watson, Corp. Counsel, for respondent.

HAZEL, District Judge. On December 31, 1908, at about 7:20 o'clock in the morning in a dense fog, the steel ferryboat Bay Ridge, on a trip from Brooklyn to Whitehall street, New York, went aground on an even keel on the southeasterly side of Governors Island. Just before grounding she collided with a canal boat lying alongside a dock on the Brooklyn side of the river and sustained damage to her upper works. After the collision she went into Buttermilk channel to get on her proper course, and then went aground on a rocky bottom. She signaled for assistance, and the steam tugs William J. McCaldin and James A. Garfield, hearing the distress signal, navigated from their mooring place near by to the scene of the mishap, going through the fog to reach her. Lines were made fast to the ferryboat, and after some pulling the McCaldin's hawser parted, and it became necessary for the tugs to maneuver in the fog and again make fast the line. In doing so the McCaldin broke her propeller wheel and the collar on the shaft between the ferryboat and the shore. The pulling on the lines by the tugs to release the ferryboat continued for about 20 minutes, when she floated. The exact location of the grounding is in sharp dispute; libelant's witnesses testifying that it occurred between Governors Island and the Black Buoy, where the bottom was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rocky, while the respondents claim that the grounding occurred at the southeast of the Black Buoy, where the bottom was soft. The injuries to her bottom and rudder, however, would seem to corroborate the testimony of the libelants on this point. The tide had an hour and 40 minutes to ebb, and her position was not fraught with immediate danger. She was lying easily, and it is not improbable that other passing tugs or water craft would have come to her assistance. Such probabilities are to be considered in awarding compensation for the services rendered. The Joseph Laughlin v. The Rumsey (D. C.) 40 Fed. 909. I am of the opinion that when the tugs came alongside the ferryboat her master understood that a compensation higher than mere towage would be exacted, and therefore I think an award on a basis of a low order of salvage would not be improper. It became necessary to overhaul and repair the McCaldin, and the estimate of the witness Shewan that the reasonable cost of her repairs was about $500 is accepted by me.

In view of the circumstances, the salvage compensation cannot be large; but, to encourage steam tugs to go to the assistance of vessels in distress under similar circumstances, I think a higher amount than for mere towage service should be paid.

As there was no great danger to the tugs if carefully navigated, I think an award to the libelant of $300 for salvage services and $500 costs of making repairs to the tug McCaldin would be a fair remuneration. Two-thirds of the salvage award may be retained by the owners of the tugs, $25 each to the masters of the McCaldin and the Garfield, and the balance to be divided among the members of the crews in proportion to their wages.

A decree may be entered accordingly, with costs.